

FILED

March 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**DECEMBER 1998 SESSION**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| **Appellee**, | ) | **C.C.A. No. 03C01-9801-CC-00006** |
| | ) | |
| **vs.** | ) | **Blount County** |
| | ) | |
| **REGINALD C. JOHNSON** | ) | **Hon. D. Kelly Thomas, Jr., Judge** |
| | ) | |
| **Appellant**. | ) | **(Delivery of Cocaine)** |
| | ) | |

FOR THE APPELLANT:

SHAWN GRAHAM (Trial)
Asst. Dist. Public Defender
419 High Street
Maryville, TN 37804

GERALD C. RUSSELL (on Appeal)
125 E. Broadway Avenue
Maryville, TN 37804

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

ELIZABETH B. MARNEY
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

PHILIP MORTON
Asst. Dist. Attorney General
363 Court Street
Maryville, TN 37804

OPINION FILED: _____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

**OPINION**

The defendant, Reginald C. Johnson, appeals from a Blount County Circuit Court jury conviction of delivery of cocaine in excess of 0.5 grams, a Class B felony. The trial court imposed a Range II sentence of fourteen years incarceration in the Tennessee Department of Correction and imposed the jury-recommended fine of $36,000. In this appeal, the defendant raises the following issues:

1. Whether the trial court erred in admitting a videotape of the defendant attempting to deal in drugs and in failing to grant a continuance once the video tape was ruled admissible;

2. whether the trial court erred in admitting a photograph which assisted the State in identifying the defendant although it had not been revealed to the defense in pre-trial discovery;

3. whether the public defender's office which represented the defendant at trial was hampered with a conflict of interests;

4. whether trial counsel was ineffective in failing to object to the use of the chemical analyst's testimony who only tested one of the six rocks of substance alleged to be cocaine; and

5. whether the evidence was sufficient to support a conviction of a Class B felony.

After review of the record and of the applicable law, we affirm the judgment of the trial court.

On August 14, 1996, the Blount Metro Naracotics Unit deployed an undercover agent to engage in the controlled buys of narcotics in Blount County. The police wired him with an audio transmission device and equipped his car with a video camera. While driving on West Fulton Street in Alcoa, he was approached

by an individual in a white shirt and white cap whom the officer identified as the defendant. The agent testified the defendant sold him six rocks of a substance for a total of $120. This transaction was the basis for the indictment and conviction in the present case. A couple of hours after this transaction occurred, the undercover agent made a second visit to West Fulton Street. The videotape record of the second visit shows the same individual in the white shirt and cap whom the agent again identified as the defendant. The second video segment provides a more extensive view of this individual's face. On this video segment, the individual attempts to sell drugs to the agent for the second time. The jury viewed both tape segments.

Officer Scott Johnson of the Blount Metro Naracotics Unit was in control of the undercover operation on August 14. He received the six rocks from the undercover agent and submitted them to the TBI Crime Lab for chemical analysis.

Officer Johnson testified that he recognized the seller on the first tape segment as Reginald Johnson, a man with whom he had been acquainted since school days. After the undercover agent turned over the contraband to Officer Johnson, the officer drove to the scene and saw the man wearing the white shirt and cap. At trial he confirmed that this man was the defendant.

The TBI chemist who analyzed the six rocks which were delivered to the TBI Lab by Officer Johnson testified that she analyzed one of the rocks and determined it to be cocaine base which is a Schedule II controlled substance. She testified that the combined weight of all the rocks was 0.7 grams. However, she did not chemically analyze any of the other five rocks, but they were similar in composition and appearance to the one rock that was tested.

At the time this case was pending in the trial court, the Blount County

3

Public Defender's office employed Officer Johnson's wife as a secretary. Although the Public Defender's Office represented the defendant in the trial of this cause, this relationship to Officer Johnson was communicated neither to the defendant nor to the trial court until after the trial. After the appointment of substitute counsel during the pendency of the motion for new trial, the new counsel amended the new trial motion and alleged a conflict of interest in the Public Defender's Office.

The defense offered no proof. After the guilty verdict and a sentencing hearing, the trial court imposed the fourteen year incarcerative sentence and the fine that had been recommended by the jury.

## I. The Second Video Tape Segment.

The jury viewed the videotape segment which depicted the undercover agent's first visit to the transaction scene. This videotape segment shows the agent's transaction with the individual wearing a white shirt and white cap. Although the agent testified that this individual was the defendant, the tape does not clearly show the face of the individual. The second tape segment was made during a second visit to the scene approximately two hours later. As the trial court observed in the jury-out hearing held pursuant to Tennessee Rule of Evidence 404(b), the second segment shows a more extensive view of the face of the person in the white shirt and cap who the undercover agent identified, once again, as the defendant. After the jury-out hearing, the trial court ruled that the second video segment was admissible on the issue of identity.

During opening argument, defense counsel told the jury that "our theory of the case is that it is not Reginald Johnson [on the videotape], that it's somebody we don't know who it is. It could be most anyone. But it is not Reginald Johnson." This was the only defense theory revealed to the jury during the opening statement. Counsel summed up this theory by saying near the end of his statement, "And, again, I can't express enough to you that the position that we're

4

taking is that it is not Mr. Johnson . . . . [I]t's someone different."

The defendant challenges the use of the second tape segment as (1) a violation of evidence Rules 403 and 404 and (2) a contravention of his right to discovery under Tennessee Rule of Criminal Procedure 16(a)(1)(C). He also complains the trial court erred in denying a continuance after the second segment was ruled admissible. We first examine the objection based on the evidence rules.

Tennessee Rule of Evidence 403 authorizes the exclusion of even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Under Rule 404, character evidence is generally inadmissible "for the purpose of proving action in conformity with the character or trait on a particular occasion." Tenn. R. Evid. 404(a). The defendant asserts that the second video segment violates Rule 404(a) because it suggests that the defendant is a drug dealer and, for that reason, has a propensity to commit the offense on trial. However, Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may be admissible for purposes other than to show that the impugned person acted in conformity with the bad character trait. Under Rule 404(b), such evidence may be admissible if the trial court, after a jury-out hearing, determines that "a material issue exists other than conduct conforming with a character trait" and that the probative value is not outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b). The comments to Rule 404 illustrate that the "other" material issues that could support the use of the evidence include "identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake." Tenn. R. Evid. 404, Advisory Comm'n Comments. After a jury-out hearing, the trial court admitted the evidence based upon its finding that it was probative on the issue of identity and that it was not unduly prejudicial.

The standard of appellate review of the trial court's Rule 404(b) determination is abuse of discretion where the trial court has substantially complied with the procedural requirements of the rule. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997).

The defendant complains that the second tape segment unfairly prejudices him by depicting him as a drug dealer and, thereby, a person more likely to have sold drugs to the agent two hours earlier. He argues that, even if the evidence was probative of identity, there was no need to admit it during the testimony of the state's first witness in its case-in-chief, that other evidence identified the defendant as the seller, and that using the tape served only to needlessly sully the defendant. The defendant cites no specific authority to support his argument that the evidence, even if probative of identity, was premature or unnecessary and that therefore the prejudice outweighed the probative value. He cites State v. Bunch, 605 S.W.2d 227 (Tenn. 1980), for the general proposition that "the rule [of exclusion] should not be circumvented by admitting evidence of another crime to show identity . . . if the defendant admits that he committed the act charged . . . or if the identity of the accused is established by other evidence and therefore, is no longer in issue." Bunch, 605 S.W. 2d at 230.

This comment from Bunch does not tell us, however, when "the identity of the accused is established by other evidence," nor does it help us to determine if identity "is no longer in issue." We know that in any criminal case, the burden rests with the state to establish a defendant's guilt. No reasonable law would impose a burden upon a party without granting that party an opportunity to carry the burden. Absent some concession by the accused, the state has the burden, and should be afforded the opportunity, of identifying the accused as the perpetrator in every criminal case.

In State v. Gregory, 862 S.W.2d 574 (Tenn. Crim. App. 1993), the

state addressed its burden of identifying the defendant as the murderer and rapist by introducing "a positive identification of the defendant's handprint and his fingerprint" on and near the bed in the victim's home where her body was tied while she was raped, tortured, and killed. Id. at 576. The state also used DNA evidence which was "consistent with the defendant's having been the perpetrator." Despite this proof, the Gregory court approved the use of evidence of the defendant's attempt to enter the apartment of another female on the day prior to the murder. Id. at 578. The court observed that, at the time the state offered the putative victim's evidence, the "state still had to prove [the defendant's] identity as the assailant." Id. Accordingly, in the absence of a stipulation as to identity, the Rule 404 evidence "was properly offered by the state" to prove identity. Id.

"Rule 404(b) does allow such evidence [of other crimes] when it is relevant to a litigated issue, such as identity . . . and its probative value is not outweighed by the danger of unfair prejudice." State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995) (emphasis added). In criminal cases, defendants do not file formal written answers to the complaining instrument. Consequently, one must look to the plea, filed notices, see e.g., Tenn. R. Crim. P. 12.1, 12.2, arguments of counsel, and evidence offered to determine what is "litigated." In the present case, the defendant declared in his opening argument that the defense theory was that he was not the person who sold drugs to the undercover agent. When the state began its case in chief, identity was clearly the issue being "litigated." We cannot say the trial court abused its discretion in allowing the second tape segment into evidence. See Dubose, 953 S.W.2d at 652. In the absence of an identity stipulation, the trial court was well within its discretion in essentially ruling that the subjective evidence of identity had not so clearly established identity so as to make further proof redundant.

The fact that other identity proof has been introduced should be considered by a trial court in determining whether the probative value of rule 404(b)

7

evidence is outweighed by the danger of unfair prejudice. The court below properly weighed the probative value against prejudicial effect and rationally concluded that the second tape segment provided highly relevant evidence of the offender's identity. Indeed, this is not a case where the state is seeking to rely upon a common scheme or plan carried out at different times, perhaps on different days, and at different locations. Here, the distinctively attired offender was identified through the second video at the same location only two hours after the offense was committed. It is difficult to think of a stronger case for demonstrating the efficacy of identity evidence. Even though some subjective evidence of identity had been admitted, the cogency of the video evidence supports the trial court's ruling. Rule 404(b) offers the defendant no relief on this issue.

Neither does Rule of Criminal Procedure 16(a)(1)(C) afford any relief. The state furnished the second tape segment to the defendant on Thursday before the trial began the following Monday. The defendant argues that the state should have disclosed the second video segment to him earlier in Rule 16(a)(1)(C) discovery. However, no right to such discovery is triggered unless the defendant makes a proper request. See Tenn. R. Crim. P. 16(a)(1)(A), (C). The record in this case reveals no such request. In a scheduling order, the trial court set a deadline for providing discovery, but the record is devoid of any request which would have obligated the state to reveal the second tape segment. At any rate, the segment was revealed a few days prior to trial.

Furthermore, the defendant made no objections at trial based upon Rule 16. As a result, the Rule 16 ground for objection is waived. Tenn R. App. P. 36(a); State v. Matthews, 805 S.W.2d 776, 781 (Tenn. Crim. App. 1988); State v. Ryan, 756 S.W.2d 284, 288 (Tenn. Crim. App. 1988).

For the above reasons, there is no error in the trial court's allowing the second video segment into evidence.

Moreover, the defendant was shown no prejudice as a result of the denial of his motion to continue. This court will not disturb a trial court's denial of a continuance absent a showing of an abuse of discretion. State v. Gregory, 946 S.W.2d 829, 831 (Tenn. Crim. App. 1997). Moreover, any abuse of discretion must prejudice the defendant. State v. Goodman, 643 S.W.2d 375, 378 (Tenn. Crim. App. 1982). The motion to continue was made after the trial began. The defense had seen the second tape segment four days earlier. There is no abuse of discretion in denying the continuance.

## II.

The defendant objected to the admission into evidence of the defendant's photograph which was taken during the defendant's jail processing after his arrest on the current charge. Both the undercover agent and Officer Johnson testified that the defendant's appearance had changed since August 14, 1996. They testified he appeared in court with facial hair shaven and with a short hair cut. Officer Johnson testified that the jail intake photograph depicted the appearance of the defendant that more closely resembled his appearance in the video tapes on August 14, 1996. This photograph had not previously been revealed to the defendant.

The defendant's claim is once again founded upon Rule of Criminal Procedure 16(a)(1)(C). However, as noted above, the record contains no request for discovery of photographs. Absent a request, the state had no duty to furnish the photograph. Moreover, the basis given for the objection at trial was irrelevancy. A party may not object on one basis and assert a different basis on appeal. Tenn. R. App. P. 36(a); State v. McPherson, 882 S.W.2d 365, 373 (Tenn. Crim. App. 1994). Moreover, the ground for this assigned error as set forth in the motion for new trial was evidence Rule 404(b). Rule 16 was not asserted in the new trial motion. Therefore, the issue is waived for this reason, as well. State v. King, 622 S.W.2d 77, 79 (Tenn. Crim. App. 1981); Tenn. R. App. P. 3(e), 36(a).

## III.

Next, we consider the defendant's claims of ineffective assistance of counsel at trial. First, the defendant alleges that defense counsel was hampered by a conflict of interests based upon Officer Scott Johnson's wife being employed as a secretary in the Public Defender's Office. Although the defendant in his brief does not specifically allege this conflict of interests as ineffective assistance of counsel, he does not articulate any other basis for obtaining any relief, and we construe the claim to be one of ineffective assistance. See Strickland v. Washington, 466 U. S. 668, 692, 104 S. Ct. 2052, 2067 (1984); Michael McNeil v. State, No. 02C01-9705-CC-00168, slip op. at 3 (Tenn. Crim. App., Jackson, Jan. 7, 1998). Second, the defendant asserts that trial counsel was ineffective in not objecting to the testimony of the TBI chemist who admitted that she failed to test six of the seven rocks which were submitted to her for testing by Officer Johnson.

When an appeal challenges the effective assistance of counsel, the appellant has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel provides assistance that falls below the range of competence demanded of criminal attorneys. Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceedings would have been different. Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994). On review, there is a strong presumption of satisfactory representation. Barr v. State, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995).

### a. Conflict of Interests.

The defendant claims his trial attorney who was employed through the public defender's office was caught in a conflict of interests which resulted in his violation of various rules of ethical conduct. See Tenn. R. Sup. Ct. 8, DR 4-101

(preserving confidences and secrets of client), DR 5-101 (restricting representation when interests of the lawyer may impair his or her independent professional judgment), DR 5-107 (avoidance of influence from persons other than the client), DR 9-101 (avoiding the appearance of impropriety).

"A claim of ineffective assistance of counsel based on an attorney's conflict of interest is examined under a slightly different standard than a traditional ineffectiveness claim." Howard Clifton Kirby v. State, No. 03C01-9303-CR-00074, slip op. at 3 (Tenn. Crim. App., Knoxville, Sept. 28, 1994). Prejudice is presumed when "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 46 U.S. at 692, 104 S. Ct. at 2067 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719 (1980)). "Until a defendant has established that defense counsel 'actively represented conflicting interests, the defendant has not established the constitutional predicate for his claim of ineffective assistance.'" Kirby, slip op. at 4.

In the present case, there is no showing that the trial attorney "actively represented conflicting interests" or that "an actual conflict of interest adversely affected his lawyer's performance." Consequently, there is no presumed prejudice.

Furthermore, the record fails to show actual prejudice. On appeal, this court may look to the prejudice prong of the Strickland standard first, and if the element of prejudice is not present, the claim of ineffective assistance fails. Strickland, 466, U.S. at 697, S. Ct. at 2069. Such is the case here. Ineffective assistance of counsel based upon the assertion of a conflict of interests has not been shown.

**b. Expert Witness Testimony.**

The defendant's next claim of ineffective assistance relates to trial counsel's failure to object to the chemist's testimony about the weight of the cocaine

11

when the expert's opinion should have been disallowed because "the underlying facts or data indicate a lack of trustworthiness." See Tenn. R. Evid. 703. In overruling this claim on the defendant's motion for new trial, the trial court held that the quantity by weight of the contraband was an issue for the jury to resolve. We hold that State v. Copeland, 677 S.W.2d 471 (Tenn. Crim. App. 1984), supports the trial court's decision.

In Copeland, the chemist received a quantity of approximately 3,000 pills. He first examined the pills "to ascertain they had the outward characteristics of Quaalude tablets." After concluding that the pills all "appeared the same," he randomly selected a total of thirty pills upon which he performed his chemical test and another nine pills upon which he performed his instrumental test. Based upon his positive findings that the samples were Quaaludes, he opined that the combined weight of all the pills was 1,087 grams of methaqualone. On appeal, Copeland complained that the testing procedure was "grossly inadequate." Id. at 474. This court held the evidence that Copeland possessed the necessary 200 grams to support his conviction was sufficient to find him guilty beyond a reasonable doubt. Id. The court said, "The weight to be given to the testimony of the witness was a question for the jury." Id.

In the present case, the chemist testified that first she weighed all of the "rocks" of the white solid material before she analyzed it. The combined weight was 0.7 gram. Then she examined all of the rocks submitted to determine if it is a "fairly consistent sample, all the rocks are about the same color, about the same texture." In the case of the rocks submitted by Officer Scott Johnson, she found them all to be consistent. Then she selected one of the rocks for analysis. The other rocks were not analyzed.

The defendant maintains the rocks of cocaine are not uniformly made and are distinguishable in this respect from Quaalude tablets. However, the record

does not reflect a sufficient basis for distinguishing the present case from Copeland. In Copeland, the court approved the basic testing methodology that was employed in the present case, and we see no basis for departing from the rule in Copeland.

Because Copeland authorizes the use of the expert evidence in the present case, the defendant has demonstrated no prejudice as a result of his trial counsel's failure to object to the evidence. For this reason, this claim of ineffective assistance of counsel must fail.

**IV.**

In addition to presenting the expert witness issue described in the preceding section as a matter of ineffective assistance of counsel, the defendant also has asserted that there is insufficient evidence of the quantity by weight of the cocaine to support his conviction of a Class B felony. Under Tennessee Code Annotated section 39-17-417(c), cocaine in an amount of 0.5 grams or more is the basis for a Class B felony. An amount of less than 0.5 grams supports only a Class C felony charge.

For the reasons explained in the preceding section, the rule in Copeland establishes the sufficiency of the evidence in the present case.

**Conclusion.**

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., Judge

CONCUR:


_____
DAVID G. HAYES, Judge


13

_____
JERRY L. SMITH, Judge